

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

STUDCO BUILDING SYSTEM U.S., LLC,

    **Plaintiff,**

v.                                                      CIVIL ACTION NO: 2:20-cv-417

1st Advantage FEDERAL CREDIT UNION,
JOHN DOE,

    **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 35. The Court finds that a hearing is not necessary. Having reviewed the parties' filings, this matter is ripe for judicial determination. For the following reasons, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

### I.    FACTUAL AND PROCEDURAL HISTORY

The following facts taken from Studco Building System U.S.' ("Studco" or "Plaintiff") Complaint are considered true and cast in the light most favorable to Studco. ECF No. 11; *see also, Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Around August 2018, 1st Advantage opened a personal checking account for an individual ("John Doe") in Virginia. *Id.* at ¶ 61. 1st Advantage is required to comply with the "Know Your Customer" ("KYC") regulations of federal Anti-Money Laundering ("AML") laws. *Id.* at ¶ 45. The Anti-Money Laundering laws require 1st Advantage to conduct customer due diligence which includes, among other things, verifying a member's identity, address and source of funds. *Id.* at ¶ 46. However, 1st Advantage did not verify John Doe's identity, physical/mailing, address, prior banking history, whether John Doe was eligible to be a member, nor did 1st Advantage verify the

source of funds intended for the account. *Id.* at ¶¶ 62-64. Shortly after, in or around October 2018, John Doe transmitted fraudulent emails to Studco in New York State. *Id.* at ¶¶ 70-73. The emails appeared to be legitimate emails from a Studco supplier, Olympic Steel based in Ohio, and directed Studco to transmit funds intended for Olympic Steel into a bank account held at 1st Advantage. *Id.* at ¶ 70, 72, 81. 1st Advantage was aware that Olympic Steel did not hold an account at 1st Advantage. *Id.* at ¶¶ 81. Then, starting in October 2018, Studco sent one ACH credit to 1st Advantage pursuant to John Doe's fraudulent email instructions. *Id.* at ¶¶ 75-95. Specifically, 1st Advantage received an ACH transfer of $156,834.55 that identified Studco as the originator and Olympic Steel, by corporate address, as the beneficiary or receiver which did not match any account holder with 1st Advantage. *Id.* at ¶ 83. The ACH credit identified the Personal Account number, but it was commercially coded as "CCD" which stands for "Corporate Credit or Debit." *Id.* at ¶¶ 79-83, 180. Pursuant to the Rules of the National Automated Clearing House Association (NACHA), CCD payments are restricted to transactions that involve only businesses. *Id.* at ¶ 77. Moreover, any CCD payments directed to personal accounts are required to be rejected by the Bank, which 1st Advantage did not do. *Id.* ¶¶ 75-79. Shortly thereafter, 1st Advantage accepted three additional high-value commercial ACH credit payments for the Personal Account, totaling $558,868.17. *Id.* at ¶ 87-92, 75.

After the funds were transferred to the Personal Account, John Doe withdrew over $558,868.17 incrementally and in-person at a 1st Advantage branch with the assistance of 1st Advantage. *Id.* at ¶¶ 108-146, 129-135. In a period of over a month, 1st Advantage employee(s) issued thirteen (13) cashier checks or wire transfers totaling $558,868.17 from the Personal Account. *Id.* at ¶¶ 113-115. Nine (9) of the thirteen (13) withdrawals from the Personal Account were made out to an individual or entity that is alleged to be known to 1st Advantage or its

2

employee(s). *Id.* at ¶¶ 115-119, 139. Specifically, $268,500 of the total money was withdrawn in person by John Doe in the form of six cashier checks at a 1st Advantage branch location made out to "Vee's Enterprises," an entity that is incorporated in Georgia and opened by a person named "Victoria Jones" (and/or "Vernasta Newton"). *Id.* at ¶¶ 117-119, 135-138. Eventually the Federal Bureau of Investigation ("FBI") in Rochester, New York commenced an investigation. During the investigation, Studco alleges that 1st Advantage has intentionally concealed, and continues to conceal, material information from Studco related to John Doe and the Personal Account and continues to perpetuate a fraud on Studco. *Id.* at ¶¶ 147-161.

On November 5, 2019, Studco initiated a suit seeking $558,868.71 in compensatory damages and not less than $100,000 in punitive damages against 1st Advantage and John Doe. ECF No. 1. On January 29, 2020, Plaintiff filed an amended complaint. ECF No. 11. Plaintiff claims six causes of action. Count I alleges Misdescription of Beneficiary, pursuant to UCC § 4A-207, against 1st Advantage and John Doe. *Id.* at ¶¶ 174-184. Count II alleges Conversion of Instrument against 1st Advantage and John Doe. *Id.* at ¶¶ 185-198. Count III alleges Bailment against 1st Advantage. *Id.* at ¶¶ 199-220. Count IV alleges fraud against John Doe and Aiding and Abetting Fraud against 1st Advantage. *Id.* at ¶¶ 221-241. Count V alleges Fraudulent Concealment against 1st Advantage. *Id.* at ¶¶ 242-256. Count VI alleges a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim against 1st Advantage and John Doe, pursuant to 18 U.S.C. §§ 1961. *Id.* at ¶¶ 257-269. Count VII alleges Money Had and Received against 1st Advantage. *Id.* at ¶¶ 270-275. Count VIII alleges a Prima Facie Tort Against 1st Advantage. *Id.* at ¶¶ 276-283.

On September 11, 2020, 1st Advantage filed the instant Motion to Dismiss the Complaint for failure to state claims pertaining to 1st Advantage. ECF Nos. 35, 36. On September 25, 2020, Studco opposed the motion. ECF No. 39. On October 1, 2020, 1st Advantage replied. ECF No. 40.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.)). In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

## III. DISCUSSION

### A. Subject Matter Jurisdiction and Choice of Law

As an initial matter, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Studco is a corporation organized under the laws of the state of New York and with a primary place of business in New York. ECF No. 1 at ¶ 9. 1st Advantage is a member-owned federal cooperative bank organized under the laws of the Commonwealth of Virginia with a primary place of business in Virginia. *Id.* at ¶ 5, 10. The amount in controversy exceeds $75,000 because Studco is seeking $558,868.71 in compensatory damages. *Id.* Exhibit 4 at 24. In a diversity action, district courts apply federal procedural law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Federal courts sitting in diversity jurisdiction apply the choice of law rules in the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that forum state's choice of law rules is substantive). Therefore, the Court will apply the law of the Commonwealth of Virginia to the state claims.

Plaintiff also asserts a federal claim, Count VI, pursuant to 18 U.S.C. §§ 1961. The law is well-established that "[r]egardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." *North Carolina v. Alcoa Power Generating, Inc.*, 2017 U.S. App. LEXIS 8226, at*10 (4th Cir. 2017) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)). Thus, the Court also has sufficient basis for federal question jurisdiction over Count VI and has supplemental jurisdiction over the remaining Counts because these claims result from the same transaction or occurrence. 28 U.S.C. § 1367(a).

## B. Dismissal of Claims Against John Doe

The United States Court of Appeals for the Fourth Circuit has recognized that while there is a necessity for allowing John Doe suits in federal courts, "[the Court is] not unaware of the right of the district court to manage its docket and the danger of permitting suits with unnamed parties to remain on the docket unprosecuted." *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982). Moreover, the Fourth Circuit has held that if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, then "the court could dismiss the action without prejudice." *Id.* That is, unless it appears that John is an actual person whose identify and address is identifiable, the Court may dismiss claims against John Doe. Furthermore, to allege diversity jurisdiction properly in a John Doe case, the plaintiff must offer "some affirmative evidence pointing toward [John Doe's] citizenship." *Sligh v. Doe,* 596 F.2d 1169, 1171 (4th Cir. 1979). While this evidence need not be "conclusive" it must be "sufficient to support a finding [regarding citizenship] in the absence of any contradictory proof." *Id.; see also, Payne v. Doe*, No. 1:16CV697, 2017 WL 1227932, at *1 (E.D. Va. Mar. 31, 2017).

Here, the Court finds that Plaintiff has had the time since the suit was filed on November 5, 2019 to identify the whereabouts, citizenship, or identity of John Doe, notwithstanding the allegations that 1st Advantage has made Plaintiff's efforts more difficult. However, in the Complaint Plaintiff, at best, alleges that the $268,500 of the total money withdrawn in person by John Doe in the form of six cashier checks at a 1st Advantage branch location was made out to "Vee's Enterprises," an entity that is incorporated in Georgia and opened by a person named "Victoria Jones" (and/or "Vernasta Newton"). ECF No. 1 at ¶¶ 117-119, 135-138. Therefore, the Court finds that Plaintiff has not provided sufficient affirmative evidence to identify John Doe's citizenship for the purpose of federal jurisdiction or to overcome the Court's concern of permitting

6

suits against unnamed parties to remain on the docket. Accordingly, the claims against John Doe are **dismissed without prejudice**.

### C. Count I: Misdescription of Beneficiary, UCC § 4A-207

Plaintiff alleges Misdescription of Beneficiary, pursuant to the Uniform Commercial Code § 4A-207, against 1st Advantage. ECF No. 11 at ¶¶ 174-184. Virginia has codified Misdescription of Beneficiary at VA Code Ann. § 8.4A-207. It provides that if the bank receives a payment order that identifies the beneficiary by name and account number, the bank may rely on the account number even if the number and name identify different persons. This is not true if the bank knows the number and name refer to different persons. Va. Code Ann. § 8.4A-207. For purposes of this statute, "Know" means actual knowledge. *Id.*; *see also, AG4 Holding, LLC v. Regency Title & Escrow Servs., Inc.*, 98 Va. Cir. 89 (2018). The drafters of the statute recognized that a "very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account. The processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself. The process is comparable to that used in automated payment of checks." Va. Code Ann. § 8.4A-207, Official Comment 2.

To put it another way, a bank may accept a wire transfer relying solely on the number as the proper identification of the beneficiary of the order and it has no duty to determine whether there is a conflict *unless* the bank actually knows that the number and the name identify different accounts. *See* U.C.C. § 4A-207(b); *Donmar Enters., Inc. v. Southern Nat'l Bank*, 828 F. Supp. 1230, 1239-40 (W.D.N.C. 1993), *aff'd*, 64 F.3d 944 (4th Cir. 1995). Thus, if the Bank does not

7

know about a conflict between the name and number, then it has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order. However, if the beneficiary's bank knew about the conflict between the name and number and nevertheless paid processed the payment, then the bank could be in violation of Va. Code Ann. § 8.4A-207 (b)(2).

In the instant matter, the key question is whether Plaintiff pleaded sufficient facts to show that 1st Advantage knew that there was a conflict between the name and the number of the Personal Account and those listed on Studco's four ACH transfers. 1st Advantage argues that it "had no obligation to determine if the beneficiary identified on the payment requests corresponded to the account number and was entitled to rely solely on the account number." ECF No. 36 at 10. That is 1st Advantage argues that it had no knowledge of any conflict and instead relied solely on matching the account numbers to process the transfer of funds into the Personal Account.

Here, the Court finds that Studco pled sufficient facts which, if proven, could show that 1st Advantage was aware that the ACH transfers were misdescribed, i.e. there was a conflict. If true, Studco could show that its wire transfers, which were commercially coded as "CCD" for Olympic Steel, did not match the name and number for any existing account at 1st Advantage for Olympic Steel. Notably, Olympic Steel has never had an account at 1st Advantage but the ACH transfers transferred into a Personal Account in the name of John Doe. ECF No. 11 at ¶¶ 75-107. While it is true that 1st Advantage has no duty to proactively discover a conflict, the Complaint alleges that 1st Advantage had actual knowledge of the misdescription because the transfers were codified as "CCD" and, thus, that it was automatically required to reject the misdescribed ACH transfers, pursuant to NACHA, but it did not. *Id.* Therefore, the issue of whether 1st Advantage had actual knowledge is a factual determination for the jury. Accordingly, the Court finds that Studco has

pled sufficient facts that, if proven true, could constitute a misdescription of beneficiary in violation of Va. Code Ann. § 8.4A-207.

### D. Count II: UCC § 3-420 Conversion of Instrument

Plaintiff alleges Conversion of Instrument against 1st Advantage. ECF No. 11 at ¶¶ 185-198. Virginia has codified Conversion of Instrument at VA Code Ann. § 8.3A-420. The statute provides:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. *An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument* or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee. (*emphasis added*).

VA Code Ann. § 8.3A-420. The term "instrument" means a negotiable instrument and includes a check. Code § 8.3A–104(b) and (f). The term "issuer" means a maker or drawer of an instrument. Code § 8.3A–105(c). The term "drawer" means a person who signs or is identified in a draft as a person ordering payment. Code § 8.3A–103(3). In this case, Studco is the "issuer" of the instrument, the ACH transfers. ECF No. 11 at ¶ 76. Moreover, John Doe is the "drawer," or the person who fraudulently ordered payment.

Pursuant to Virginia law, both the issuer and drawer are barred by VA Code Ann. § 8.3A-420 from bringing forth a claim of Conversion of Instrument when the instrument is subject to a claim of fraud. *See Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 658 (2004) (holding that "[w]e know for certain what the result must be when an instrument with a forged signature is the subject of a claim for conversion brought by the issuer thereof. The result is the dismissal of the claim."). Particularly, the Supreme Court of Virginia held that when a fraudulent instrument is the subject of a claim for conversion then the VA Code Ann. § 8.3A-420(a)(i) bars either the issuer or drawer

9

from bringing a claim for conversion. *Id.*; *see also*, *Fax Connection, Inc. v. Chevy Chase Bank, F.S.B.*, 73 Va. Cir. 263, *judgment entered sub nom. THE FAX CONNECTION, INC., &, Thomas Draghi, Plaintiffs, v. CHEVY CHASE BANK, FSB, et. al., Defendants.* (Va. Cir. Ct. 2007)

Here, Studco alleges that John Doe committed fraud by ordering that Studco deposit ACH transfers at 1st Advantage. Accordingly, the ACH transfers, or instruments Studco issued were invalid and subject to a claim fraud and, thus, cannot be the basis for a claim of conversion against 1st Advantage. Therefore, Count II is **dismissed with prejudice** as it pertains to 1st Advantage.

### E. Count III: Bailment

Plaintiff alleges Bailment against 1st Advantage. ECF No. 11 at ¶¶ 199-220. Under Virginia law, a bailment is "the rightful possession of goods by one who is not the owner." *K-B Corp. v. Gallagher*, 218 Va. 381, 384 (1977). Ordinarily, for a bailment to arise there must be a delivery of the chattel by the bailor and its acceptance by the bailee. *Crandall v. Woodard*, 206 Va. 321, 327 (1965). However, while no formality, contract, or actual meeting of the minds is required to establish the relationship, "the element of lawful possession[...], and duty to account for the thing as the property of another that creates the bailment...." *Id.* In order for an alleged bailee to have possession, "there must be the union of two elements, physical control over the thing possessed, and an intent to exercise that control." *See* R. Brown, The Law of Personal Property s 10.1, 213-14., (3rd ed. 1975); *see also*, *York v. Jones*, 717 F.Supp. 421, 425 (E.D.Va. 1989). Physical control coupled with an intent to exercise control over the goods constitute possession. *Compare Morris v. Hamilton*, 225 Va. 372 (1983) (guest at party who picks up watch from counter in attempt to return it to owner was a gratuitous bailee) with *K–B Corp.*, 237 S.E.2d 183, 185 (Va. 1977) (no bailment found where employer required employee to furnish his own tools but employee kept them in the office in a locked box to which only employee had the key). Although bailment requires

a common law duty of care, a statute may define the duty of care. *See Williamson v. Old Brogue, Inc.*, 232 Va. 350, 355, 350 S.E.2d 621, 624 (1986) (holding "a statute may define the standard of care to be exercised where there is an underlying common-law duty....") (citing *Butler v. Frieden*, 208 Va. 352, 353, 158 S.E.2d 121, 123 (1967)). In this case, the NACHA Rules and § 8.4A-207 UCC establish that 1st Advantage must act in a commercially reasonable manner or that it exercised ordinary care when it has control over ACH transfers. 1st Advantage agrees that NACHA sets such a standard of care. ECF No. 36 at 11-12.

1st Advantage maintains that it acted with the requisite standard of care because it "rel[ied] solely on the account number listed in the payment requests and had no duty to ascertain whether there was a conflict between the name of the identified payee and the account number." ECF No. 36 at 12. Thus, 1st Advantage argues that it cannot be held liable to Studco for bailment. *Id.*

However, the question of whether 1st Advantage acted in a commercially reasonable manner in exercising control over Studco's ACH transfers is one that the jury must answer. As noted above in Section III.C, the Court finds that Studco has pleaded sufficient facts that, if proven true, could show that 1st Advantage *did not* act with the requisite standard of care in processing, i.e. possessing, the ACH transfers because it was aware of a conflict between the names and account numbers. *See* Section III.C; *see also,* ECF No. 11 at 75-107. Specifically, the Complaint alleges that the NACHA Rules provide that "it is not commercially reasonable to deposit commercially-coded 'CCD' transfers expressly identified as 'business transactions' into a personal checking account. Furthermore, NACHA Rules require that depositing 'CCD' coded transfers into consumer accounts is not commercially reasonable. ECF No. 39 at 25; *see also,* ECF No. 11 at ¶ 172, 194, 204. Moreover, Studco has adequately alleged that 1st Advantage did not act in a commercially

reasonable manner in allowing John Doe to fraudulently withdraw money over a month in-person. ECF No. 11 at ¶¶ 113-115, 130-35. Therefore, the motion to dismiss Count III is not meritorious.

### F. Count IV: Aiding and Abetting Fraud

Plaintiff alleges Aiding and Abetting Fraud against 1st Advantage. ECF No. 11 at ¶¶ 221-241. There are two questions relevant to the instant motion to dismiss as it pertains to 1st Advantage: (1) whether aiding and abetting fraud is recognized in Virginia (and if so, what are the elements); and (2) whether Studco pleaded sufficient facts to plausibly establish aiding and abetting fraud.

Neither Virginia law, Virginia State Courts, nor the United States Court of Appeals for the Fourth Circuit have recognized aiding and abetting fraud as a separate tort. *See All. Tech. Grp., LLC v. Achieve 1*, LLC, No. 3:12CV701-HEH, 2013 WL 143500, at *4 (E.D. Va. Jan. 11, 2013) ([T]he Supreme Court of Virginia has refrained from either recognizing or rejecting a separate 'aiding and abetting' tort.) (citing *Halifax Corp. v. Wachovia Bank*, 268 Va. 641 (Va. 2004)); *see also, Terry v. SunTrust Banks, Inc.*, 493 Fed.Appx. 345, 356 n.9 (4th Cir. 2012) ("Because we conclude LES was not a fiduciary under Virginia law, we need not resolve SunTrust's alternative argument that Virginia does not recognize a cause of action of aiding and abetting a tort."). At most, both state and federal district courts are split. *Compare, e.g., Tysons Toyota, Inc. v. Commonwealth Life Ins.*, 20 Va. Cir. 399 (1990) ("A defendant who aids and abets in the commission of a tort may be jointly liable for that tort, but he is not liable for a separate tort of aiding and abetting."); *with AvalonBay Communities, Inc. v. Willden,* No. 1:08-CV-777, 2009 WL 2431571, at *11 (E.D. Va. Aug. 7, 2009), *aff'd*, 392 Fed.Appx. 209 (4th Cir. 2010) ("Virginia law allows a third party to be liable for another party's breach of fiduciary duty when that third party knowingly participated in the breach."); *Sherry Wilson & Co. v. Generals Court, L.C.*, No. 21696, 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002) ("Thus, unlike some jurisdictions, it may

be said that the common law of the Commonwealth has looked with favor upon recovery in tort against those who aid and abet others in the commission of the civil wrong for which damages may be maintained.").

Since the state law is unclear, the Court "must determine the rule that the state Supreme Court would probably follow, not fashion a rule which an independent federal court might consider best." *Meadow Ltd. P'ship v. Heritage Sav. & Loan Ass'n*, 639 F. Supp. 643, 653 (E.D. Va. 1986). On this basis, some courts have conducted analysis on a cause of action for aiding and abetting despite misgivings about its appropriateness. *See id* ("the Court assumes *arguendo* that Virginia would recognize these causes of action"); *see also All. Tech Grp.*, 2013 WL 143500, at *5 (finding that "[i]t is not entirely clear that *Patteson* created a separate tort of 'aiding and abetting,'" but nevertheless addressing its elements as "a viable alternative theory to secure joint liability") (citing *Patteson v. Horsley*, 70 Va. 263 (1877)). However, other federal courts have declined to analyze a separate aiding and abetting claim. *See MicroStrategy Servs. Corp. v. OpenRisk, LLC*, No. 1:14CV1244 JCC/IDD, 2015 WL 1221263, at *3 (E.D. Va. Mar. 17, 2015), *on reconsideration*, No. 1:14CV1244 JCC/IDD, 2015 WL 2126924 (E.D. Va. May 6, 2015) ("This Court declined to create such a cause of action [for aiding and abetting] and dismissed a claim identical to the one here for aiding and abetting a breach of fiduciary duty."); *Calderon v. Aurora Loan Serv., Inc.*, 1:10CV129, 2010 WL 2306343, at *6 (E.D. Va. June 3, 2010).

The Court finds that at most Virginia law currently allow a third party to be liable for aiding and abetting another party's breach of fiduciary duty when that third party knowingly participated in the breach. *See AvalonBay*, 2009 WL 2431571, at *11. Accordingly, to establish a claim for aiding and abetting another party's breach of fiduciary duty, "the third party must affirmatively aid the breach with the requisite *mens rea*, or culpable state of mind." *Id.* That is, the plaintiff must

show that the "defendant: (1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it." *All. Tech. Grp.*, 2013 WL 143500, at *5 (citing *Patteson v. Horsley*, 70 Va. 263, 270-71 (1877)); *see also, Avalon Bay Communities, Inc.* at *11 (E.D. Va. Aug. 7, 2009) ("Virginia law allows a third party to be liable for another party's breach of fiduciary duty when that third party knowingly participated in the breach.").

Here, Studco claims that 1st Advantage failed to notice John Doe's fraudulent scheme, facilitated the ACH transfers into John Doe's account, and refused to help Studco identify John Doe's whereabouts after discovering the alleged fraud. ECF No. 11 at ¶ 68, 79, 151. However, these facts, even if true, fail to satisfy the elements of aiding and abetting a breach of fiduciary duty. Studco's Complaint does not state that 1st Advantage "had actual knowledge of an existing duty and breach [between John Doe and Studco] that [1st Advantage] knowingly participated in." *Herold v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2018 U.S. Dist. LEXIS 70573 at *9 (E.D. Va. Apr. 25, 2018). Therefore, Count IV (Aiding and Abetting Fraud) against 1st Advantage is **dismissed with prejudice.**

### G. Count V: Fraudulent Concealment

Plaintiff alleges fraudulent concealment against 1st Advantage. ECF No. 11 at ¶¶ 242-256. Virginia law has not codified "fraudulent concealment" as a claim available to a plaintiff under an enumerated statute. Rather, fraudulent concealment is recognized by Virginia state law as an "affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Culpeper National Bank v. Tidewater Improvement Co., Inc.*, 119 Va. 73, at 83-84 (1916). Accordingly, Virginia courts have consistently held that "[f]raudulent concealment must consist of affirmative acts of misrepresentation, mere silence being insufficient." *Culpeper Nat'l Bank, 119 Va. at 83–84, 89 S.E. at 121* (quoting 2 H.G. Wood & Dewitt C. Moore, Limitation

of Actions at Law and in Equity 1422 (4th ed. 1916)); *see also, Newman v. Walker*, 270 Va. 291, 296–97, 618 S.E.2d 336, 338–39 (2005), *see also, Mackey v. McDannald*, 298 Va. 645, 842 S.E.2d 379, 387 (2020) (holding that "[m]ere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action.") (citations omitted). Plaintiff must show that a defendant concealed with the intent to "trick or artifice preventing, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence, and mere silence is insufficient. There must be something actually said or done which is directly intended to prevent discovery." *Culpeper Nat'l Bank 119 Va. at 83–84*. Similarly, the Fourth Circuit has interpreted fraudulent concealment as an "equitable doctrine that provides for tolling of a limitations period, [… to] prevent[] a defendant from concealing a fraud, or committing a fraud in a manner that it concealed itself until the defendant could plead the statute of limitations to protect it." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019). In the Fourth Circuit, fraudulent concealment applies "in situations where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. *Id.* Accordingly, the Fourth Circuit long has held that to toll a limitations period based on fraudulent concealment, "a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, at 122 (4th Cir. 1995) (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974)). *Id.* at 548 (4th Cir. 2019); *See, e.g., SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 107–08 (4th Cir. 2018); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 370 (4th Cir. 2014); *Go Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007).

In the instant matter, Studco alleges that 1st Advantage "concealed material facts of the fraud against Studco to hinder, frustrate and outright defeat Studco's attempts to recover its fraudulently transferred funds, thereby causing damage to Studco...." ECF No. 39 at 18; *see also,* ECF No. 11 at ¶¶ 148-51, 153, 157, 159-60, 161. However, 1st Advantage asks this Court to dismiss this claim because 1st Advantage has merely remained silent on Studco's numerous requests to identify John Doe. *Id.* at ¶¶ 252-56, *see also,* ECF No. 36 at 12. That is, 1st Advantage argues that since it has not made "any affirmative misrepresentations or acts designed to conceal John Doe's identify from Studco," this claim should be dismissed. *Id.*

The Court finds that Studco has pleaded sufficient facts that, if proven true, could show that 1st Advantage has made several misrepresentations or affirmative acts designed to prevent the discovery of vital information to help Studco establish causes of actions against John Doe. *See Culpeper National Bank* 119 Va. 73, at 83-84. While Studco still bears the burden of showing that 1st Advantage acted with the intent to misrepresent, Studco has pleaded facts which support this reasonable inference. For example, Studco alleges that it made several requests in which 1st Advantage initially provided *some,* but not all, information concerning John Doe's identity, activity, and whereabouts but then refused to keep responding to Studco's additional inquiries. *See* ECF No. 11 at ¶ 9-14, 19, 21. If proven true, Studco could show that 1st Advantage's actions constitute an affirmative act or misrepresentation designed to prevent Studco from obtaining information to bring claims against John Doe.

## H. Count VI: Civil RICO

Plaintiff alleges Civil RICO against 1st Advantage and John Doe, pursuant to 18 U.S.C. §§ 1961 *et seq.* ECF No. 11 at ¶¶ 257-269. Generally, the elements of a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim are (1) a person, (2) an enterprise, (3) a pattern of

(4) racketeering activity (5) which causes injury to the plaintiff. 18 U.S.C.A. § 1962 (a, c). "The injury and causation components [of element (5)] are viewed as standing requirements." *D'Addario v. Geller*, 264 F.Supp.2d 367, at 396 (E.D.Va. 2003); *see also, Williams v. Equity Holding Corp.*, 498 F. Supp. 2d 831, 840 (E.D. Va. 2007). The Supreme Court has explained that a civil RICO claim has four essential elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). "Racketeering activity" includes mail and wire fraud. *See* 18 U.S.C.A. § 1961(1)(B). These elements are "demanding" because "Congress contemplated that only a party engaging in widespread fraud would be subject to RICO's serious consequences." *Goodrow v. Friedman & MacFayden, P.A.*, 2012 WL 6725617, at *9 (E.D. Va. Dec. 27, 2012); *see also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989). For a pattern of racketeering activity to exist, "two or more predicate acts of racketeering must have been committed within a ten-year period." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002). For this reason, RICO's remedies are not appropriate for "the ordinary run of commercial transactions." *Menasco, Inc.* at 683; *see also, ePlus Tech.*, 313 F.3d at 181 (noting that the pattern requirement is "designed to prevent RICO's harsh sanctions ... from being applied to garden-variety fraud schemes"). Instead, "[w]e have reserved RICO liability for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" *Al–Abood*, 217 F.3d at 238 (quoting *Menasco*, 886 F.2d at 684). Consequently, "simply proving two or more predicate acts is insufficient for a RICO plaintiff to succeed." *Id.* at 238. Instead, "a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893 (*emphasis added*). Moreover, a plaintiff must "plead with particularity that any other persons were similarly harmed

by Defendants' alleged fraud, and thus failed to show 'a distinct threat of long-term racketeering activity.'" *Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 274 (4th Cir. 2010) (quoting *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893); *see also Menasco,* 886 F.2d at 684. Thus, "[i]n essence, the pattern requirement has been reduced to a 'continuity plus relationship' test." *ePlus Tech.*, 313 F.3d at 181; *see also, Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 273 (4th Cir. 2010). Additionally, if a RICO claim is based on alleged fraudulent activity, a plaintiff must also meet "the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires particularity for claims of fraud." *Navient Solutions, LLC v. Krohn & Moss, Ltd.*, 2018 WL 6790654, at *6 (E.D. Va. July 26, 2018).

In the instant matter, the Court finds that Studco has not met the heightened pleading requirement to allow the Court to reasonably infer that there is more than the mere plausibility that 1st Advantage is liable for a civil RICO claim. Although Plaintiff does allege that 1st Advantage and John Doe were "work[ing] together to syphon those funds, totally over $500,000 from the Personal Account by a series of patently fraudulent withdrawals," Plaintiff fails to satisfy the continuity plus relationship test. *See* ECF No. 11 at ¶ 260; *see also, ePlus Tech.*, 313 F.3d at 181. That is, Plaintiff does not plead with particularity that any other persons were harmed by John Doe's alleged fraudulent scheme, that the scheme was/is ongoing, or that 1st Advantage presents a "distinct threat of long-term racketeering activity." *Foster.*, 363 F. App'x at 274. Moreover, Plaintiff does not allege that 1st Advantage directed, managed, or conspired with John Doe to specifically orchestrate a long-term racketeering scheme to defraud Plaintiff and others. Rather Plaintiff consistently refers to the fraud as one organized by and perpetuated by John Doe. *See e.g.*, ECF No. 11 at ¶ 112, 116, 120-23, 125-27, 146-47.

Therefore, Count VI against 1st Advantage is **dismissed with prejudice**.

### I. Count VII: Money Had and Received

Plaintiff alleges Money Had and Received against 1st Advantage. *Id.* at ¶¶ 270-275. In Virginia, "an action of Money Had and Received exists whenever one has money of another which he has no right to retain and which defendant is obligated by natural justice and equity to refund." *Hartford Fire Ins. Co. v. First Union Natl. Bank,* 45 Va. Cir. 279 (1998) (citing *Shores v. Shaffer,* 206 Va. 775, 146 S.E.2d 190 (1966)); *see also, Robertson v. Robertson,* 137 Va. 378, 119 S.E. 140 (1923). Moreover, federal and state courts in Virginia have held that a cause of action for Money Had and Received is indistinguishable from Conversion, codified at Va.Code § 8.3A-420. *See State of Qatar v. First Am. Bank of Virginia,* 880 F. Supp. 463, 467 (E.D. Va. 1995) (holding "the two torts are quite similar. Because whatever difference exists does not affect the disposition of this action, the Court will refer to the action as one simply for conversion.").

As noted above in Section III.D, the Court dismissed Plaintiff's claim of Conversion of Instrument against 1st Advantage (Count II) because Studco is barred by VA Code Ann. § 8.3A-420 from bringing forth a claim of Conversion of Instrument. Therefore, Count VII against 1st Advantage is also **dismissed with prejudice**.

### J. Count VIII: Prima Facie Tort

Plaintiff alleges prima facie tort against 1st Advantage. ECF No. 11 at ¶¶ 276-283. The Court finds that the Commonwealth of Virginia does not recognize prima facie tort as a valid cause of action. *See Unlimited Screw Prod., Inc. v. Malm,* 781 F. Supp. 1121, 1130 (E.D. Va. 1991) *(citing Meadow Ltd. Partnership v. Heritage Sav. & Loan Ass'n,* 639 F.Supp. 643, 653 (E.D.Va. 1986) (holding that "the Virginia Supreme Court has not recognized these various claims [including prima facie tort].").

Therefore, Count VIII against 1st Advantage is **dismissed with prejudice**.

## IV. CONCLUSION

Plaintiff pleaded sufficient facts to state a claim to allow this Court to draw reasonable inferences that relief is plausible on its face for Counts I, III, and V against 1st Advantage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Counts II, IV, VI, VII, and VIII are dismissed with prejudice as to 1st Advantage. Moreover, all claims asserted against John Doe are dismissed without prejudice.

Based on the foregoing reasons, Defendant 1st Advantage's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 18, 2020

Raymond A. Jackson
United States District Judge